LUCILLE KERR *v.* JACK MURPHY ET AL

5-5923                                       484 S.W. 2d 684

Opinion delivered September 25, 1972

*Cooper Jacoway,* for appellant.

*Kemp & Whitmore,* for appellees.

GEORGE ROSE SMITH, Justice. This suit was brought by the appellant, Lucille Kerr, to obtain a pension as the widow of Jack Kerr, a former Little Rock policeman. The appellees, trustees of the police department's pension fund, resisted the claim on the ground that Mrs. Kerr is not entitled to a pension, because she did not marry Officer Kerr until after his retirement from the police force. The trial court sustained the trustees' position and accordingly dismissed the suit.

The issue, upon undisputed facts, is purely one of statutory construction. Officer Kerr retired on February 5, 1952, and began receiving a pension under Act 67 of 1941. In December of 1952 he and the appellant were married. The couple were still married at Kerr's death in August of 1957. Mrs. Kerr was not then entitled to a pension, because Section 18 of the aforesaid Act

67 provided that "if any policeman marries after he is retired, his widow shall not be entitled to any pension under this Act."

Act 67 had, with respect to cities having a population of 75,000 or more, superseded Act 250 of 1937, which originally applied to all cities having a population of more than 16,000. There were many differences between the two statutes. To mention a few, they utilized different sources for the creation of the pension fund; the beneficiaries entitled to receive pensions were not exactly the same under the two acts; and the amounts to be paid as benefits were not identical under the two acts. More specifically, and of significance here, Section 8 of the 1937 act provided that the widow of a retired policeman was entitled to a pension, while, as we have said, Section 18 of the 1941 act denied her a pension unless she had married the officer before his retirement.

The decision in this case turns upon the interpretation of Act 206 of 1959. That act, a comparatively brief measure, repealed Act 67 of 1941 and provided that thereafter policemen's pension funds should be administered under Act 250 of 1937. The appellant apparently asserted no claim immediately following the passage of the 1959 statute, but in 1970 she filed the present suit, seeking to recover a pension from and after the effective date of the 1959 act.

Opposing counsel present persuasive arguments in support of their contentions. The appellant's brief stresses our opinion in *Looper* v. *Gordon,* 201 Ark. 841, 147 S.W. 2d 24 (1941), holding that pension acts are to be liberally construed in favor of those to be benefited. Counsel for the appellees rely upon *Cross* v. *Graham,* 224 Ark. 277, 272 S.W. 2d 682 (1954), where we held, in harmony with the basic rule that legislation is to be construed to be prospective only in its operation, that certain acts increasing policemen's pensions were "forward-looking in their operation . . . and envisage the attachment of certain rights to a pensionable status to be achieved in the future." Upon that reasoning we held that increased pensions were payable only to those bene-

ficiaries who qualified for them *after* the passage of the acts. Both the cited cases are persuasive, but neither is so precisely in point as to be controlling.

It is our conclusion that the governing legislative intention is clearly discernible in the two sentences of Act 206 of 1959 which declared the purpose and effect of that act. Section 1 of the act specifically repealed Act 67 of 1941. Section 2 of the 1959 act then stated its purpose and effect, in this language:

> From and after the effective date of this act policemen's pension and relief funds that have been established in cities of seventy-five thousand population, or over, shall be assessed, collected, administered and benefits paid in accordance with the provisions of Act. No. 250 of the Acts of the General Assembly of the State of Arkansas of 1937, and all Acts amendatory thereto. Provided, however, that nothing herein shall alter, amend or change, increase or diminish, any retirement benefits being paid to any retired policeman, or to the widow or dependents of any [deceased] policeman or deceased retired policeman, at the time this act goes into effect.

Despite the positive legislative assertion in the second sentence that the act is not to alter, amend, change, increase, or diminish existing pensions, the appellant urges us to attach overwhelming importance to the phrase "retirement benefits being paid." It is argued that since no retirement benefits were "being paid" to Mrs. Kerr when the 1959 act took effect, the quoted phrase therefore evidenced a legislative intent to confer upon Mrs. Kerr, and upon others similarly situated, a brand-new right to a pension under the 1937 statute.

We do not find that reasoning to be sound, because it would require us to construe a single phrase in the second of the quoted sentences without regard to its context and without regard to the overall legislative intent.

The first of the two quoted sentences in the 1959 act declared that after the effective date of the act policemen's pension funds "shall" be administered, and benefits paid, in accordance with Act 250 of 1937. Had the draftsman of the act stopped with that sentence, a multitude of questions would have been left unanswered. As we have seen, Act 67 of 1941 (the act being repealed) and Act 250 of 1937 (the act being reinstated) provided different sources of funds for differing pensions to be paid to differing beneficiaries. The mere substitution of the 1937 act for the 1941 act, without explanation, would obviously have given rise to much uncertainty. With respect to the persons entitled to benefits and the amount of those benefits, which act should control when the two statutes were found to be in conflict? To what extent were vested rights created by the pension system?

Those questions were set at rest by the second quoted sentence, which declared that "nothing herein shall alter, amend or change, increase or diminish," the retirement benefits being paid on the effective date of the act. We think it too plain for serious argument to the contrary that the dominant purpose of the second sentence was to make it absolutely clear that the substitution of the 1937 statute for the 1941 statute was not to disturb retroactively rights that were already in effect under either act.

Yet the appellant's argument would read into that second sentence an exactly contrary intention—that of using the two words "being paid" as an almost hidden device for disturbing the status quo retroactively, by creating rights where none existed at the time of the passage of the act. We find it impossible to believe that the legislature selected the language in question with the deliberate intention of putting into effect two approaches to the same problem completely at war with each other. We conclude that the trial court was correct in its interpretation of the statutes.

Affirmed.

JONES, BYRD, and HOLT, JJ., dissent.

J. FRED JONES, Justice, dissenting. I agree with the majority that the issue in this case is purely one of statutory construction, but I am unable to read out of § 2, Act 206 of 1959, the legislative intent the majority seems to read into it.

Officer Kerr retired from the Little Rock Police Department February 5, 1952, and received a retirement pension in the amount of $125 per month. On December 19, 1952, he married the petitioner, Lucille Kerr, and they remained married to each other until Officer Kerr's death on August 31, 1957. Mrs. Kerr has not remarried but remains the widow of Jack Kerr. Officer Kerr retired and started drawing his benefits under the provisions of Act 67 of 1941 which remained in effect until repealed by Act. 206 of 1959.

The Policemen's Pension and Relief Fund was originally created by Act 250 of the Acts of the General Assembly for 1937. As originally enacted, it applied to cities of not less than 16,000 inhabitants and by amendment in 1939 the number of inhabitants was lowered to 8,000. The 1937 Act, after providing for the creation, financing and administration of the pension fund, then provided by § 8 as follows:

"If any member of said department shall, while in the performance of his duty, be killed or dies as a result of injuries received in the performance of his duty, or shall die of disease contracted by reason of his occupation, or shall die from natural causes while in said service, shall leave a widow or child or children under the age of 16 years survive, the said board of trustees shall direct a payment from said pension and relief fund monthly to such widow, while unmarried, of fifty ($50.00) dollars, and for each child until it reaches the age of 16 years ten ($10.00) dollars, should he leave no widow or children, but a widowed mother, solely dependent upon his support, the board shall pay the sum of fifty ($50.00) dollars monthly, as long as she remains unmarried. Provided, that any member of the police department retired and pensioned under

the provision of this Act shall die while so retired and pensioned, leaving a widow or children or widowed mother surviving, shall be entitled to a pension under this act."

It is clear to me that if Officer Kerr had retired and been pensioned under the provisions of this 1937 Act, his widow would have been entitled to pension benefits following his death. When Officer Kerr did retire and start receiving his pension in 1952, there were two Policemen's Pension Fund Acts in effect. As above stated, the 1937 Act applied to cities with 8,000 or more inhabitants and Act 67 of 1941, under which Officer Kerr received his pension, provided for a policemen's pension and relief fund in cities having a population of 75,000 and a paid police department in excess of 60 policemen. After providing for financing and adminis- tration of the fund under this 1941 Act, § 18 then provided as follows:

"If any policeman or retired policeman shall die, leaving a widow, the Board shall pay the widow a pension of Fifty ($50.00) Dollars per month so long as she remains unmarried, and if the deceased shall leave surviving him children under the age of eigh- teen (18) years, each child shall be paid Ten ($10.00) Dollars per month until it reaches the age of eigh- teen (18) years, if it remains unmarried. Provided that no family of a deceased policeman or deceased retired policeman shall receive a total pension of more than Seventy-Five ($75.00) Dollars per month. *Provided further, that if any policeman marries after he is retired, his widow shall not be entitled to any pension* under this Act." (Emphasis added).

It will be noted that the 1941 Act provided the same monthly benefits to the widow and dependent children as did the 1937 Act except that the 1941 Act limited the total amount to be paid a widow and dependent children to $75 per month, and the 1941 Act provided benefits for dependent children until 18 years of age rather than 16 as provided in the 1937 Act. The 1941 Act also pro- vided that if a policeman should marry *after* retirement,

his widow would not be entitled to a pension *under the Act.*

The 1941 Act repealed all laws or parts of laws in conflict with it, and the only law in conflict with it was the 1937 Act as amended in 1939. Thus the 1937 Act remained in full force and effect except in cities having a population of 75,000 and police department in excess of 60 policemen. It was while both the 1937 and 1941 Acts were in effect that Officer Kerr retired from the police force, started receiving his pension, and married Mrs. Kerr in 1952, and died in 1957. Mrs. Kerr was the widow of Officer Kerr after his death and would have been eligible for widow's benefits under the 1937 Act had Officer Kerr been receiving benefits under that Act rather than under the 1941 Act applicable to cities of 75,000 population. The only reason Mrs. Kerr was not entitled to a pension upon the death of Officer Kerr was because the 1941 Act simply said: "If any policeman marries after he is retired, his widow shall not be entitled to any pension under this Act." Officer Kerr married Mrs. Kerr after he retired, so there is no question that Mrs. Kerr was not entitled to a pension under the 1941 Act.

In 1959 the situation changed as to widows and dependent children of deceased policemen, for by Act 206, of 1959, the 1941 Act applying to cities of 75,000 was repealed outright in its entirety, § 2 of the 1959 Act being as follows:

"From and after the effective date of this act policemen's pension and relief funds that have been established in cities of seventy-five thousand population, or over, shall be assessed, collected, *administered and benefits paid* in accordance with the provisions of Act No. 250 of the Acts of the General Assembly of The State of Arkansas of 1937, and all Acts amendatory thereto. Provided, however, that nothing herein shall alter, amend or change, increase or diminish, any retirement benefits *being paid* to any retired policeman, or *to the widow or dependents* of any deceased policeman or deceased retired policeman, *at the time this act goes into effect.* Provided,

further, that the ten per centum of all fines and forfeitures collected by the police department of such city for violations of city ordinances and added to such pension funds as provided by said Act 250 of 1937, as amended, shall not apply to any city that now has, or hereafter has, an assessed property valuation in excess of $80,000,000.00" (Emphasis added).

The only reason Mrs. Kerr did not start receiving a pension under the 1937 Act upon the death of Officer Kerr in 1957, was because the 1937 Act was in conflict with the 1941 Act and no longer applied to cities having a population of 75,000. It is my opinion, therefore, that when the 1941 Act was repealed in 1959, the conflicting provisions of the 1937 Act were no longer conflicting and again became applicable to all cities having at least 8,000 inhabitants, and that the appellant Lucille Kerr became eligible for pension benefits under the provisions of the 1937 Act.

The majority recognize the rule announced in *Looper* v. *Gordon*, 201 Ark. 841, 147 S. W. 2d 24, where we said:

"Pension acts should be liberally construed in favor of those to be benefited. The rule is stated in 43 C. J. 813, § 1408, as follows: 'Like other pension laws, pension acts applicable to members of the police force will be liberally construed.' Again in § 1493, the rule is stated: 'As in the case of other statutes, pension acts applicable to firemen should be construed to give force and effect to the legislative intent as embodied therein. The purpose of the acts being regarded as beneficial, they should be liberally construed in favor of those to be benefited.' "

It seems to me that the majority reads far more legislative intent into the proviso of § 2 of the 1959 Act than I am able to read out of it. We may reasonably assume that there were dependent children between the ages of 16 and 18 drawing $10 per month under the provisions of the 1941 Act and when the 1941 Act was repealed by

the 1959 Act, the legislature simply provided: ". . . that nothing herein shall alter, amend or change, increase or diminish, any retirement benefits *being paid to* any retired policeman, or to the widow or dependents of any deceased policeman or deceased retired policeman, at the time this act goes into effect." (Emphasis added). I simply cannot read into this language any legislative intent at all relative to the rights of a widow to whom a pension is *not being paid.* As I construe the language, it only applies to retirement benefits *"being paid to any retired policeman, or to the widow or dependents of any deceased policeman or deceased retired policeman."* (Emphasis added).

I would reverse the judgment in this case and remand with directions to grant the petition for a writ of mandamus directing the respondents to process Mrs. Kerr's petition for benefits under the 1937 Act.

BYRD and HOLT, JJ., join this dissent.